UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

MITRA DAS, MUKTI
L. DAS, and TROCA HOLDINGS
LLC, for themselves, and as assignees
of BOSTON EAST TYNGSBORO
HOLDINGS LLC,

       Plaintiffs,

  v.

THE LOWELL FIVE CENT SAVINGS
BANK, DAVID WALLACE, and
JOHN PRATT JR.,

       Defendants.

Case no. 1:24-cv-10931-PBS

---

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

### I.    INTRODUCTION

While the complaint is long and contains numerous conspiratorial-like allegations, one of the central themes is the same argument that the defendant made at trial which was proven false and rejected by the jury. The complaint is not only materially false and misleading but was made with a clear purpose to deceive a court about his recent conviction. In sum, the complaint alleged that the civil defendant, Lowell Five, unlawfully retaliated against the defendant, produced false records and testimony to the US Government, and that corrupt behavior led to his unlawful conviction at trial in this case.

*See* Sentencing Memorandum, Exhibit 1 hereto, in *United States v. Das*, 1:21-cr-10200-RGS.[1]

Upon the filing of this lawsuit, the US Attorney for the District of Massachusetts

succinctly described what this lawsuit is all about. Despite Plaintiffs' amendment of the

---

[1] Defendants use of documents outside of the First Amended Complaint herein does not convert this motion to a motion for summary judgment, as courts may consider certain documents when considering a motion to dismiss, including public records, documents central to the plaintiffs' claim, documents sufficiently referred to in the complaint, and documents whose authenticity is not disputed by the parties. *See Charest v. Federal Nat. Mortg. Ass'n*, 9 F.Supp.3d 114 (D.Mass. 2014).

Complaint, the First Amended Complaint ("FAC") suffers the same fatal flaws that the US Attorney identified in the initial pleading. Plaintiffs' allegations against the Defendants have already been disproven by multiple courts, fail to state a claim upon which relief may be granted, and their equal rights, equal credit opportunity, interference with contractual relations, and Chapter 93A claims are outside the respective statutes of limitations for those claims. The First Amended Complaint should be dismissed with prejudice.

## II.    **FACTS**[2]

The Plaintiffs in this matter are about to have judgment entered against them in the Middlesex Superior Court (Civil Action. No. 1981CV03481) (the "Superior Court Action"). In the Superior Court Action, summary judgment recently entered in favor of Lowell Five against Boston East Tyngsboro Holdings, LLC ("Boston East"), Mukti Das, Mitra Das, and Abhijit "Beej" Das. *See* Superior Court Summary Judgment Order, Exhibit 2 hereto. Now, Mitra Das, Mukti Das, and Troca Holdings, LLC (in part as assignees of Boston East), seek to relitigate claims that were mostly addressed or could have been addressed in the Superior Court Action.

On October 13, 2023, a jury in this Court found Beej Das guilty of the following charges: (1) accepting excessive campaign contributions; (2) causing conduit campaign contributions to be made; (3) converting campaign funds to personal use; (4) making material false statements to the FEC (1Q 2018); and (5) making material false statements to the FEC (2Q 2018). *See* United States of America v. Das, 1:21-cr-10200-RGS, at Doc. no. 158. On July 18, 2024, Judge Stearns

---

[2] The FAC is confusing, contradictory, conclusory, and vague.  As detailed below, the FAC does not comply with the requirements of Rule 8(a)(2).  The Defendants have elected to construe the FAC in the most favorable terms to the Plaintiff (for purposes of this motion only), in an attempt to understand the allegations and present them fairly, and proceed with their Motion to Dismiss. The Defendants expressly dispute the majority of the "facts" that are presented in the FAC.

sentenced Beej Das to 21 months in prison followed by 1-year of supervised release, and assessed fines of $25,500. *Id.* at Doc. no. 188.[3]

The bulk of the allegations in the FAC appear to be an airing of grievances blaming the Defendants and other parties for Beej Das's conviction. For example, Plaintiffs allege that Lowell Five wrongfully submitted Suspicious Activity Reports ("SARs"). *See* FAC at ¶¶ 15-25, 32 ("Lowell Five leveraged powerful tools available to banks under the provisions of the Bank Secrecy Act, 12 USC § 1951 et seq. (the 'BSA'), most specifically the use of so-called 'Suspicious Activity Reports' (or 'SARs')"). The FAC claims that, in addition to submitting "false evidence" to the State Court in the form of "a doctored appraisal," several of the Bank's employees and one member of its Board of Directors provided "intentionally misleading" testimony at Das's criminal trial. *Id.* Plaintiffs admit that Lowell Five's reporting of SARs does not provide them with a private cause of action; nevertheless, Plaintiff's here contend that that Lowell Five's reporting was "discriminatory and arbitrary by design" and done to punish Beej Das, Troca Holdings, and the Das family. *See* FAC at ¶¶ 32, 119-120.

Plaintiffs further allege that Lowell Five intentionally interfered with their contractual relations with their insurer and was unjustly enriched because it received insurance proceeds from their insurer. *See* FAC at Counts III and IV. They also claim the Defendants' actions violated Mass. Gen. Laws. c. 93A.

Several years prior to filing the FAC, the Beej Das, Mukti Das, Mitra Das, and Boston East initiated the Superior Court Action. The Superior Court Complaint (Exhibit 3 hereto) alleged that Lowell Five breached its contract with the Plaintiffs by failing to advance funds required under a

---

[3] Beej Das remains subject to a separate criminal indictment pending in this Court. *See* United States v. Das, 1:23-cr-10160-AK.

loan issued by Lowell Five and requiring Boston East to add guarantors to the loan; that Lowell

Five was unjustly enriched by accepting payments under the loan but not distributing all funds it

was required to lend; that Lowell Five intentionally interfered with contractual relations by

requesting it be named as a loss payee on Boston East's insurance policy as required by its

agreement with Boston East; and that Lowell Five's actions breached the implied covenant of good

faith and fair dealing and violated Chapter 93A. *Id.* On October 11, 2024, Judge Cathleen Campbell

issued an order granting summary judgment in favor of Lowell Five as to all of the claims asserted

against it. *See* Superior Court Summary Judgment Order, Exhibit 2 hereto. Judge Campbell also

ruled in favor of Lowell Five on its breach of contract counterclaim against Plaintiffs. *Id.* Judgment

will soon enter in the Superior Court Action.

### III.    <u>ARGUMENT</u>

On a motion to dismiss, the court must take "as true all well-pleaded facts set forth in the

complaint and draw all reasonable inferences therefrom in the pleader's favor." *Artuso v. Vertex*

*Pharm., Inc.,* 637 F.3d 1, 5 (1st Cir. 2011). "In evaluating the sufficiency of the complaint, [the

court should] first disregard all conclusory allegations that merely parrot the relevant legal

standard." *Id.* The Court should "then inquire whether the remaining factual allegations state a

plausible, rather than merely a possible, assertion of defendants' liability." *Id.*

### A.  **Plaintiffs' First Amended Complaint Should be Dismissed Because it Violates Fed. R. Civ. P. 8.**

Plaintiffs' 353 paragraph, 886-page (with exhibits) FAC should be dismissed because it is

not a "short and plain statement of the claim showing that the pleader is entitled to relief." This

Court described the requirements of Rule 8(a)(2) as follows:

> FRCP 8(a)(2) requires that any pleading stating a claim for relief "must contain a short
> and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(d),
> captioned "Pleading to Be Concise and Direct," further provides that "each allegation

must be simple, concise, and direct." The purpose of a clear and succinct pleading is to give a defendant fair notice of the claim and its basis as well as to provide an opportunity for a cogent answer and defense. *See Ruiz Rivera v. Pfizer Pharm., LLC,* 521 F.3d 76, 84 (1st Cir.2008). "The statement of the claim should be short because 'unnecessary length places an unjustified burden on the court and on the party who must respond to it.' " *Greg Beeche Logistics, LLC v. Skanska USA Bldg., Inc.,* C.A. No. 12–11121, 2014 WL 4656503 (D.Mass. Aug. 5, 2014) (citation omitted) (adopting Report & Recommendation); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1281, 709 (3d ed.) ("Unnecessary prolixity in a pleading places an unjustified burden on the district judge and the party who must respond to it because they are forced to ferret out the relevant material from a mass of verbiage.").

"A district court has the power to dismiss a complaint when a plaintiff fails to comply with the Federal Rules of Civil Procedure, including Rule 8(a)(2)'s 'short and plain statement' requirement." *Kuehl v. F.D.I.C.,* 8 F.3d 905, 908 (1st Cir.1993). " 'Dismissal [for noncompliance with Rule 8] is usually reserved for those cases in which the complaint is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised,' " such that it would be "unreasonable to expect defendants to frame a response to it." *Sayied v. White,* 89 Fed.Appx. 284 (1st Cir.2004) (alteration in original) (quoting *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988)); *see also Jackson v. Polaroid Corp.,* 181 F.3d 79 (1st Cir.1999) (affirming dismissal of "long and redundant" 350–paragraph complaint for noncompliance with FRCP 8); *Youngworth v. Gentile,* No. C.A. 05–30108, 2006 WL 516757 (D.Mass. Feb. 27, 2006) (dismissing complaint containing "hundreds of assertions" and presented in "a rambling, discursive essay form," without prejudice to filing an amended pleading in compliance with the Federal Rules).

*Belanger v. BNY Mellon Asset Mgt., LLC*, 307 F.R.D. 55, 57–58 (D. Mass. 2015). As detailed herein, the FAC recycles rejected arguments, appears to include facts for claims no longer operative (see FAC at ¶ 336 alleging racketeering violations), and hides behind the use of the term "on information and belief" to paint Defendants as racist and in a negative light, without any factual support. Moreover, each of Plaintiffs' five causes of action repeat and reallege all allegations in the FAC. It is not possible for Defendants to possibly determine which of the 300 plus paragraphs of allegations apply to each Count asserted against them.

**B. All Claims Must be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).**

    i.   <u>Plaintiff's equal rights and equal credit opportunity Claims Must be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).</u>

        *a. Bank Secrecy Act*

Plaintiffs' FAC spends considerable time discussing non-party Beej Das's failed candidacy for the 2018 Massachusetts Third Congressional race and his criminal conviction. Beej Das is no longer a party to this matter and has no active claims asserted against the Defendants. Nonetheless, in an apparent attempt to continue to harass Lowell Five and its employees, and to try to rebut his criminal conviction, allegations which have been proven false by several courts are again included in the FAC.

The Plaintiffs correctly note that the Bank Secrecy Act "does not provide a private right of action for individuals or entities to sue banks for violations of its provisions" and "[Suspicious Activity Reports] filed by banks under the BSA are confidential and banks are generally prohibited from disclosing whether they have filed an SAR on any individual or transaction." *See* FAC at ¶ 119. Paragraphs 119-180 summarize, in part, testimony from Beej Das's recent criminal trial.[4] Plaintiffs then use Paragraphs 180-190 to try to show disparate treatment by Lowell Five compared to how Plaintiffs believe Lowell Five may have interacted with another candidate for the congressional seat that Beej Das unsuccessfully ran for.

---

[4] Beej Das has not asserted any claims in this lawsuit. He is prohibited from relitigating issues he had an opportunity to attack in his criminal trial. In Massachusetts, the doctrine of collateral estoppel (issue preclusion) can be applied to prevent a criminal defendant from relitigating issues that were decided against them in a prior criminal prosecution in subsequent civil litigation. *Aetna Cas. & Sur. Co. v. Niziolek*, 395 Mass. 737 (1985). Thus, to the extent the FAC is an attempt to relitigate issues by Beej Das's parents that Beej Das raised but did not prevail on in his criminal trial, Plaintiffs should be prohibited from doing so.

Plaintiffs cannot use reporting Lowell Five made under the Bank Secrecy Act to support any of their claims. Congress has granted financial institutions like Lowell Five immunity from liability for filing SARs. *See* 31 U.S.C. § 5318(g)(3)(A). The statute granting immunity reads:

> Any financial institution that makes a voluntary disclosure of any possible violation of law or regulation to a government agency ... shall not be liable to any person under any law or regulation of the United States, any constitution, law, or regulation of any State or political subdivision of any State, or under any contract or other legally enforceable agreement (including any arbitration agreement), for such disclosure....

*Id.*

This Court has observed that "[t]he First Circuit has expressly rejected the idea of an implicit good faith requirement in § 5318(g)(3)(A)." *AER Advisors v. Fidelity Brokerage Services, LLC*, 327 F. Supp. 3d 278, 284 (D. Mass. 2018) (Saris, J.), *citing Stoutt v. Banco Popular de Puerto Rico*, 320 F.3d 26, 30-32 (1st Cir. 2003) (declining to read good faith requirement into statute). This Court noted that the First Circuit's rejection of an implicit good faith requirement was done " in sweeping language, indicating that the statute grants absolute immunity from suit, even when disclosures are fabricated or made with malice." *Id.* Thus, in part not to discourage disclosure, the First Circuit "concluded that § 5318(g)(3) immunizes financial institutions whose SAR disclosures are 'wilfully [sic] false' or 'unfounded, incomplete, careless and even malicious.'" *AER Advisors*, 327 F. Supp. 3d at 284, *quoting Stoutt*, 320 F.3d at 32.

It appears that Plaintiffs seek to support their equal rights and equal credit opportunity claims by showing disparate treatment in terms of SARs reporting. But even Plaintiffs admit they cannot do that. *See* FAC at ¶ 119. Thus, Counts I and II must be dismissed because there are no facts to support them outside of Lowell Five's protected activity in reporting suspicious activity.

ii.    The Unjust Enrichment Claim and Intentional Interference Claims Must be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiffs' unjust enrichment and intentional interference with contractual relation claims in the FAC are subject to dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

"A determination of unjust enrichment is one in which [c]onsiderations of equity and morality play a large part.'" *Metropolitan Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013), *quoting Salamon v. Terra, 394 Mass. 857, 859* (1985). "A plaintiff asserting a claim for unjust enrichment must establish not only that the defendant received a benefit, but also that such a benefit was unjust, 'a quality that turns on the reasonable expectations of the parties.'" *Metropolitan Life Ins. Co.*, 464 Mass. at 644, *quoting Global Investors Agent Corp. v. National Fire Ins. Co.*, 76 Mass. App. Ct. 812, 826 (2010). "The injustice of the enrichment or detriment in quasi-contract equates with the defeat of someone's reasonable expectations." *Metropolitan Life Ins. Co.*, 464 Mass. at 644, *quoting Salamon*, 394 Mass. at 859.

For Plaintiffs to sufficiently allege intentional interference with a contract, they must show that "(1) [they]had a contract with a third party; (2) the defendant[] knowingly induced the third party to break that contract; (3) the defendant['s] interference, in addition to being intentional, was improper in motive or means; and (4) [Plaintiffs were] harmed by the defendant['s] actions." *Williamson v. Barlam*, 103 Mass. App. Ct. 727, 733 (2024), *quoting Draghetti v. Chielewski*, 416 Mass. 808, 816 (1994). "The third element—improper motive or means—requires something more than intentional interference." (citation and quotation omitted) *Williamson*, 103 Mass. App. Ct. at 733. "The improper motive or means may include 'deceit or economic coercion ... or ill will.'"

In the Superior Court Action, the judge ruled that Lowell Five's actions did not intentionally interfere with Plaintiffs' right to recover insurance proceeds ("Boston East had a

contractual relationship with its insurer. Lowell Five contacted Boston East's insurance broker to inform it that Lowell Five was the mortgagee and loss payee for the Property under the Loan and that it should be included on any insurance payments. This does not constitute intentional interference with contractual relations."). *See* Superior Court Summary Judgment Order, Exhibit 2 hereto, at p. 14.

Lowell Five had a contractual right to be listed as a loss payee on the insurance policy. There can be no reasonable expectation – given Lowell Five's contractual rights – that Plaintiffs were instead entitled to the funds. There are no allegations that can support Plaintiffs' claims for unjust enrichment or intentional interference with contractual relations.

     iii.   <u>Plaintiff's Chapter 93A Claim Must be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6)</u>.

Plaintiff's Chapter 93A claims must be dismissed because the premise for that claim rests upon the non-viable allegations discussed above, and which cannot support any other cause of action. *See* FAC at ¶ 350 (Chapter 93A violations include Defendants' bad faith interference with Borrower's negotiations with its insurer, discriminatory conduct aimed at ruining a disfavored, minority borrower, and predatory and collusive practices). *See Pembroke Country Club, Inc. v. Regency Savings Bank*, 62 Mass. App. Ct. 34, 41 (2004) (no viable Chapter 93A claim exists where it is derivative of other claims that have not been established). As detailed above, Plaintiff's Chapter 93A claims were directly addressed and rejected by the Superior Court. They have failed to state any new claim upon which relief may be granted.

    **C. Plaintiffs' Equal Rights, Equal Credit Opportunity, Intentional Interference with Contractual Relations, and Chapter 93A Claims are Barred by the Applicable Statutes of Limitation.**

Plaintiffs' claims in Count I (Equal Rights Under the Law), Count II (Equal Credit Opportunity), Count IV (Intentional Interference with Contractual Relations), and Count V

(Violation of Mass. Gen. Laws. c. 93A) must be dismissed because all of the information

necessary to know Plaintiffs had allegedly been harmed has been known for years.

    i.   Count I – 42 U.S.C. § 1981 (Equal Rights Under the Law).

Plaintiffs' Count I, a claim under 42 U.S.C. § 1981 was not brought within the applicable

four-year statute of limitations. *See* 28 U.S.C. § 1658(a); *Buntin v. City of Boston*, 813 F.3d 401,

405 (1st Cir. 2015). Claims for discrimination under Section 1981 accrue "when the alleged

unlawful act 'has a crystallized and tangible effect on the [claimant] and the [claimant] has notice

of both the act and its invidious etiology.'" *Id.* (quoting *Shervin v. Partners Healthcare Sys., Inc.*,

804 F.3d 23, 33 (1st Cir.2015). Moreover, if the acts occurred more than four years prior to the

filing of the lawsuit asserting the Section 1981 claim, the claim is time-barred. *See, e.g.*, *Garmon*

*v. Nat'l Railroad Passenger Corp.*, 844 F.3d 307, 318 n. 8 (1st Cir. 2016).

Here, Plaintiffs predicate their claims on representations Defendants made about the terms

of the proposed loan in 2014 and Defendants' alleged withholding of renovation financing under

the loan between 2014 and 2018. *See* FAC ¶¶ 54, 60-62, 64, 71-72, 105; Exh. AA2. Plaintiffs

outlined all of their alleged injuries on July 17, 2019, when they sent a demand to Defendants

claiming the same. *See* Superior Court Complaint, Exhibit 3 hereto, at Exhibit H thereto.

In a likely attempt to escape statute of limitations issues, the Plaintiffs diluted their

allegations regarding "Renovation Financing" as laid out in the original Complaint and the FAC.

In the Complaint, Plaintiffs alleged that Lowell Five refused to advance the promised Renovation

Financing on January 30, 2015. *See* Complaint, Doc. no. 1, at ¶ 85. Now, the FAC simply says,

without a date for reference, that "Lowell Five ultimately refused to advance additional promised

Renovation Financing." *See* FAC at ¶ 73. Despite Plaintiffs' attempts to obscure the date under

which their claims arose, the Superior Court Complaint confirms the claim relating to "Renovation

Financing" which includes Count I (Equal Rights Under the Law – 4-year statute of limitations) and Count II (Equal Credit Opportunity – 5-year statute of limitations, see below) arose no later than January 30, 2015. *See* Superior Court Complaint, Exhibit 3 hereto, at ¶ 17. Plaintiffs also allege that American Express terminated their corporate accounts in the third quarter of 2018 (nearly six years before this action was brought) and suggest it was done because Lowell Five falsified records to harm the Plaintiffs. *See* FAC at ¶ 36. Plaintiffs further allege that Defendants' intentional activities "are part of a pattern of practice of discriminatory behavior towards minorities, including Hispanics and Black Americans." *Id.* at ¶¶ 37-39.

Plaintiffs' Count I must be dismissed as it is clearly barred by the four-year statute of limitations.

ii.    Count II – 15 U.S.C. § 1691 (Equal Credit Opportunity).

The Equal Credit Opportunity Act, 15 U.S.C. § 1691 ("ECOA"), provides that "no . . . action shall be brought later than five years from the date of the occurrence of the violation . . . ." 15 U.S.C. § 1691e(f) (1988); *see Ramsdell v. Bowles*, 64 F.3d 5, 9 (1st Cir. 1995); *e.g.*, *Farrell v. Bank of New Hampshire-Portsmouth*, 929 F.2d 871, 872-74 (1st Cir. 1991) (holding limitations period for ECOA action based on marital status discrimination accrued on date the bank conveyed to the borrowers that their spouses' personal guarantee was required); *Williams v. Countrywide Home Loans, Inc.*, 504 F.Supp.2d 176, 193 (S.D. Tex. 2007) (granting summary judgment on basis of limitations because alleged violation of lender's obligation to provide borrower a copy of appraisal report occurred when the note and deed of trust were transferred eleven years prior to borrower filing suit).

Plaintiffs assert that the Defendants violated the provisions of the ECOA by allegedly discriminating against Plaintiffs Mitra Das and Mukti Das on the basis of their race, color, and national origin as follows:

- by "depriving them of the Renovation Financing" which they claim they were entitled to obtain "*under the terms of the Loan Documents*." (FAC at ¶ 334) (emphasis added);

- by "withholding funds due to Plaintiffs" (FAC at ¶ 335) (emphasis added);

- by "compell[ing] Plaintiffs Mukti and Mitra Das, husband and wife, *to both execute personal guarantees*" (FAC at ¶ 335) (emphasis added); and

- by requiring "Mitra Das and her spouse Mukti Das, along with their son Beej Das, to *execute personal guarantees under economic duress*." (FAC at ¶ 336) (emphasis added).

Plaintiffs' claims are barred by the applicable five (5) year statute of limitations for asserting claims under the ECOA. While the ECOA allows for certain individuals to pursue civil claims against creditors for violating the ECOA's non-discrimination provisions, a complainant's ability to assert such a claim is not unlimited in duration. To the contrary, the ECOA declares that, with certain exceptions that are not applicable here, "no such action may be brought later than five years after the occurrence of the violation." 15 U.S.C.A. § 1691e (f).

Here, the allegations of the Amended Complaint and attached exhibits make clear that the events underpinning Plaintiffs' ECOA claims "occurred" more than five (5) years from the filing of their FAC and are therefore barred as a matter of law. In fact, paragraph 62 of the FAC confirms that the "Loan Documents" were executed by the original borrower, Boston East, on August 1, 2014. *See* FAC at ¶ 62.

Although certain information relating to the Loan Documents and the personal guarantees was inexplicably omitted from their FAC, Exhibit AA4, filed with Plaintiffs' original Complaint, confirms that, on June 4, 2015, the Plaintiffs executed a Change in Terms Agreement, pursuant to which the individual Plaintiffs Mukti Das and Mitra Das agreed to provide their "unlimited guarantees of the entire indebtedness." *See* Doc. no. 1-1, Exhibit AA4, Complaint. *See also,* Original Complaint, Doc. no. 1, at ¶ 93 (Describing the Bank's refusal to provide additional Renovation Financing and Plaintiffs' execution of their personal guarantees on June 4, 2015).

Further, Plaintiffs original Complaint, at paragraph 85, recited that, on January 30, 2015, the Bank advised that it would not agree to extend "the remaining portion of the Renovation Financing" due to its concerns regarding the loan to value ratios.  *See also* Complaint, Doc. no. 1, at ¶ 88 ("As of January 30, 2015, when Lowell Five first refused to provide Renovation Financing . . . . ").

Plaintiffs filed their original, lengthy Complaint in this matter on April 10, 2024 (Doc no. 1) and their FAC of virtually the same length on October 25, 2024 (Doc. no. 30). However, Plaintiffs' pleadings and exhibits in this case demonstrate that the conduct they rely upon to support their ECOA claim against the Bank indisputably occurred more than five (5) years prior to the present action, with the result that their claims against the Bank at Count II are time-barred and must be dismissed.

Mukti Das and Mitra Das also lack standing to assert ECOA claims as the above-referenced loan documents indicate they are "guarantors" and not "borrowers" within the meaning of the ECOA. The US Courts of Appeals for the Seventh, Eighth and Eleventh Circuits, representing the majority view of United States Federal Circuit of Appeals that have addressed the issue, have held that the ECOA's protections do not extend to guarantors because a guarantor

of a credit applicant is not an applicant. *See Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1190 (11th Cir. 2019) *cert denied* 2020 WL 2515457; *Hawkins v. Cmty. Bank of Raymore*, 761 F.3d 937, 942 (8th Cir. 2014), *aff'd*, 136 S. Ct. 1072 (2016); *Moran Foods, Inc. v. Mid-Atl. Mkt. Dev. Co.*, 476 F.3d 436, 441 (7th Cir. 2007); *cf. RL BB Acquisition, LLC v. Bridgemill Commons Dev. Grp., LLC*, 754 F.3d 380, 384 (6th Cir. 2014)) (disagreeing with the Seventh, Eighth, and Eleventh Circuits).

iii.    Count IV – Interference with Contractual Relations and Count V –
        Violation of Mass. Gen. Laws c. 93A.

Plaintiffs' state law claims of intentional interference with contractual relations (3-year statute of limitations) and violation of Chapter 93A (4-year statute of limitations) suffer a similar fate as their federal claims.

A claim for intentional interference with contractual relations is subject to a three-year statute of limitations under Massachusetts law. *Pure Distributors, Inc. v. Baker*, 285 F.3d 150, 154 (1st Cir. 2002). "The limitations period generally begins to run at the time of the plaintiff's injury." *Id.* at 155; *see, e.g., Lease America Org. Inc. v. Rowe Intern. Corp.*, 2014 WL 1330928, at *1-*5 (D. Mass. 2014) (dismissing time-barred tortious interference claim where Plaintiff's cause of action accrued when defendant terminated the parties' direct-sales jukebox agreement and used its central server to turn off all the jukeboxes plaintiff had sold to venues); *Abdallah v. Bain Capital LLC*, 880 F.Supp.2d 190, 197 (D. Mass. 2012) (finding tortious interference claim accrued on the date of plaintiff's self-evident injuries: losing her job and not receiving benefits under a plan).

"The limitations period for claims brought under Chapter 93A is four years from the date the cause of action accrues." *O'Brien v. Deutsche Bank Nat'l Trust Co.*, 948 F.3d 31, 35 (1st Cir. 2020) (citing M.G.L. c. 260, § 5A). In *Latson v. Plaza Home Mortgage Inc.*, this circuit held that plaintiff's cause of action accrued when they signed mortgage agreements, the terms of which

14

underly their 93A claim, because "the terms and the implications of their burdens were apparent when the [plaintiffs] signed and got their money." 708 F.3d 324, 326-27 (1st Cir. 2013). In *In Re Sheedy*, this circuit similarly held that the limitations period for plaintiff began when she entered into the loan because she should have known upon receipt of the loan documents that certain terms were incorrect despite blaming defendants for "not delivering all required material disclosures and by misrepresenting some of the [loan] terms disclosed." 801 F.3d 12, 20-21 (1st Cir. 2015).

Plaintiffs aver Defendants manipulated the Superior Court proceedings by presenting the court with an altered 2017 appraisal. *See* FAC ¶¶ 219-222. The 2017 appraisal was allegedly "doctored" on or before February 19, 2020 (FAC ¶ 242). On February 21, 2020, the Superior Court denied Plaintiffs' motion for dissolution of *ex parte* trustee process, in part, based on "insufficient evidence" that the 65% loan-to-value ratio had been met allowing for the release of the personal guarantees. *See* Superior Court 2/21/2020 Order, Exhibit 4 hereto.

Even giving the Plaintiffs the benefit of the doubt that the claims asserted in the FAC relate back to the filing of the original Complaint on April 10, 2024, Plaintiffs' Chapter 93A claims are time-barred and must be dismissed.

Moreover, a November 26, 2019 affidavit submitted by Abhijit Das in the Superior Court action closely tracks the allegations in the FAC. *See* Affidavit of Abhijit Das, Exhibit 5 hereto. Plaintiffs knew as of October 21, 2019 that Lowell Five contacted Plaintiffs' insurer while asserting its rights under its agreements with the Plaintiffs. *See* Superior Court Complaint, Exhibit 3 hereto, at ¶ 43. It appears the sole basis for Plaintiffs' intentional interference with contractual relations claim is their contact with Plaintiffs' insurer. *See* FAC at ¶ 343. But Plaintiffs knew of this contact as far back as 2019, and initiating this action in 2024 is well outside the three-year statute of limitations.

The statutes of limitations on Plaintiffs' intentional interference with contractual relations and Chapter 93A claims expired prior to the filing of the April 10, 2024 Complaint. The facts supporting these claims were previously alleged in the November 26, 2019 Superior Court Complaint and were known to Plaintiffs before the statutes of limitations for each of the claims expired. Accordingly, Counts IV and V should be dismissed.

### D. Plaintiffs' Claims Have Already Been Addressed by the Massachusetts Superior Court.[5]

The Plaintiffs have already had one bite at the apple in the Superior Court Action. Final judgment will enter in the Defendants' favor in that action. The Massachusetts Superior Court entered a comprehensive summary judgment order that addresses the state law claims Plaintiffs seek to relitigate in the FAC. Specifically, the Superior Court addressed Plaintiffs' arguments that the Defendants intentionally interfered with Plaintiffs' insurance contract, were unjustly enriched by receiving the insurance proceeds, and violated Chapter 93A by its actions.

In the FAC, Plaintiffs allege that "Lowell Five was unjustly enriched by receiving a payment from Plaintiffs' insurer for nearly a quarter million dollars . . ." *See* FAC at ¶ 339. Plaintiffs allege that Lowell Five's "secret negotiations with Plaintiff's insurer and receipt of a $253,628.24 payment without Plaintiffs' knowledge or consent adversely affected Plaintiff's claims under its insurance policy with Zurich" and that such actions interfered with Plaintiffs' contract with its insurance company, and said interference was "intentional, malicious, and without lawful justification." *Id.*. at ¶¶ 343-345.

---

[5] Counsel for Lowell Five recently served a Motion for Entry of Final Judgment in the Superior Court Action. The Defendants requested this Court stay this matter until that Final Judgment enters given the arguments set forth below. Defendants intend to seek leave to inform the Court if Final Judgment enters before this Motion to Dismiss is ruled on so that the Court may further consider the preclusive effect of that judgment.

Plaintiff's allegations in the FAC regarding the insurance payout were directly addressed in the Superior Court Summary Judgment Order. The Superior Court succinctly distilled Plaintiffs' claims with respect to the insurance contract as follows:

> Boston East alleges in its Complaint that Lowell Five interfered with Boston East's insurance contract to pressure Boston East to make contractual concessions and abandon claims against Lowell Five and that the interference resulted in Boston East being unable to recover amounts due under its insurance policy. Lowell Five argues that it is entitled to Summary Judgment on the intentional interference with contractual relations claim because Lowell Five was simply notifying Boston East's insurance broker that it failed to include Lowell Five as a joint payee as required by the Loan. The Court agrees with Lowell Five.
>
> Boston East had a contractual relationship with its insurer. Lowell Five contacted Boston East's insurance broker to inform it that Lowell Five was the mortgagee and loss payee for the Property under the Loan and that it should be included on any insurance payments. This does not constitute intentional interference with contractual relations. The Guarantors' characterization of this contact as "actual malice" because Lowell Five indicated it could bring a civil action to enforce its right to the insurance proceeds is misplaced. Lowell Five's contact with the insurer was proper. After all, Boston East failed to properly list Lowell Five on the insurance as required by the Loan.

*See* Superior Court Summary Judgment Order, Exhibit 2 hereto, at p. 14.

Plaintiffs cannot relitigate issues with respect to the insurance contract that were already decided by the Superior Court. It has already been determined as a matter of law that "Lowell Five's contact with the insurer was proper." Plaintiffs fail to note in the FAC that the reason for Lowell Five's contact with the insurer was because "Boston East failed to properly list Lowell Five on the insurance as required by the Loan." Thus, it logically follows that the payment by Zurich to Lowell Five was proper, Lowell Five was legally entitled to receive it, and was not unjustly enriched nor intentionally interfered with Troca Holdings' contractual relations as a result.

Finding that their other claims were not viable, the Superior Court ruled that because the Chapter 93A claim relied solely on other claims which had not been established, judgment in

favor of Lowell Five was proper. *Id.* at p. 15. The Superior Court again noted that because

Lowell Five complied with the contractual terms and did not interfere with Boston East's

insurance relationship, summary judgment in favor of Lowell Five was appropriate. *Id.* In

addressing allegations directly made in the FAC, the Superior Court ruled that

> Lowell Five did not breach the Loan or any implied covenants of the Loan and did not
> interfere with Boston East's insurance contract. In addition, the Guarantors' admissions
> show that the Change Agreement was willingly entered into and that the Change
> Agreement and Guarantees did not contain language that would automatically release
> Guarantors. Further, the loan-to-value ratio never fell below 65%.

*Id.*

Final judgment on the merits of an action bars the parties or their privies from relitigating

claims that were or could have been raised in that action. *Porn v. National Grange Mut. Ins. Co.,*

93 F.3d 31, 34 (1st Cir.1996). *See Yankee Microwave, Inc. v. Petricca Communications Sys., Inc.,*

53 Mass.App.Ct. at 508, 760 N.E.2d 739; *Heacock v. Heacock,* 402 Mass. at 23, 520 N.E.2d 151

("This is so even though the claimant is prepared in a second action to present different evidence

or legal theories to support his claim, or seeks different remedies"); *Bendetson v. Building*

*Inspector of Revere,* 36 Mass.App.Ct. 615, 618–619, 634 N.E.2d 143 (1994); *Tinkham v. Jenny*

*Craig, Inc.,* 45 Mass.App.Ct. 567, 571, 699 N.E.2d 1255 (1998). "The policy ... behind res

judicata is to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial

resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" *Bay*

*State HMO Mgmt., Inc. v. Tingley Sys., Inc.,* 181 F.3d 174, 181 (1st Cir.1999), cert. denied sub

nom. *CSC Consulting, Inc. v. Tingley Sys., Inc.,* 528 U.S. 1187, 120 S.Ct. 1240, 146 L.Ed.2d 99

(2000), *quoting from Apparel Art Intl., Inc. v. Amertex Enterprises Ltd.,* 48 F.3d at 583, quoting

from *Allen v. McCurry,* 449 U.S. at 94, 101 S.Ct. 411. Res judicata will be employed by the

courts to prevent the splitting of a cause of action where the party to be precluded had both the

opportunity and the incentive to litigate all related matters fully in the original lawsuit. *Heacock v. Heacock,* 402 Mass. at 24, 520 N.E.2d 151.

"To determine whether sufficient subject matter identity exists between an earlier and a later suit, federal courts employ a transactional approach." *Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 755 (1st Cir. 1994). "This approach recognizes that a valid and final judgment in an action will extinguish subsequent claims 'with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" *Id., quoting from Manego v. Orleans Bd. of Trade,* 773 F.2d 1, 5 (1st Cir.1985), *cert. denied*, 475 U.S. 1084, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986). *See* Restatement (Second) of Judgments § 24 (1982). Further, "[t]o bring claim preclusion into play, a cause of action need not be a clone of the earlier cause of action." *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Assn.,* 142 F.3d 26, 38 (1st Cir.1998).

Plaintiffs' FAC arises out of the same "series of connected transactions" out of which the Superior Court action arose. Whether Plaintiffs allege different legal theories or evidence is of no consequence. The FAC is an attempt to recycle arguments and claims the Superior Court rejected. Once final judgment is entered, principles of claim preclusion will apply to bar further litigation of those claims in this action. The Plaintiffs are asking this Court to disregard the prior decision of the Massachusetts Superior Court. Plaintiffs had the opportunity and incentive to litigate these issues in the Massachusetts Superior Court, and are not entitled to re-litigate these issues in this Court.

## IV.    <u>CONCLUSION</u>

This lawsuit continues Plaintiffs' campaign of harassment and retaliation against the Defendants. The Plaintiffs continue to waste the resources of the court system and the

Defendants by relitigating claims already dismissed or which are demonstrably false as detailed during Beej Das's criminal trial. The First Amended Complaint should be dismissed with prejudice and judgment should enter in favor of the Defendants.

Respectfully submitted,
The Defendants,
THE LOWELL FIVE CENT SAVINGS
BANK, DAVID WALLACE, AND
JOHN PRATT, JR.,

By their counsel,


*/s/ Daniel R. Sonneborn*
Daniel R. Sonneborn (BBO# 679229)
dsonneborn@preti.com
Gregory A. Moffett (admitted *pro hac vice*)
gmoffett@preti.com
Preti Flaherty Beliveau & Pachios, LLP
60 State Street, Suite 1100
Boston, Massachusetts 02109
Telephone: (617) 226-3800

Dated: December 13, 2024


## CERTIFICATE OF SERVICE

I certify that on December 13, 2024, this document (filed through the ECF system) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and electronic copies will be sent to those indicated as non-registered participants.


*/s/ Daniel R. Sonneborn*
Daniel R. Sonneborn