UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MITRA DAS, MUKTI L. DAS,
and TROCA HOLDINGS LLC,
for themselves, and as assignees of
BOSTON EAST TYNGSBORO
HOLDINGS LLC,

          Plaintiffs,

v.

THE LOWELL FIVE CENT SAVINGS
BANK, DAVID WALLACE,
JOHN PRATT JR., and
RICHARD D. REAULT,

          Defendants.

**Case No. 1:24-cv-10931-PBS**

**MEMORANDUM IN
OPPOSITION TO
DEFENDANTS' MOTION
TO DISMISS THE FIRST
AMENDED COMPLAINT**

## I.  INTRODUCTION

Defendants spend much of their motion to dismiss attacking Abhijit ("Beej") Das — someone who is not a party to the First Amended Complaint ("FAC"). Defendants' concerted effort toward this bit of misdirection notwithstanding, this case is not about Beej Das. This case is about Defendants' unlawful behavior designed to deprive these Plaintiffs of their constitutional rights and the damage this behavior has inflicted. Plaintiffs have stated valid claims, based on well-pleaded factual allegations that the Court must accept as true. At the motion to dismiss stage, nothing more is required. Defendants' motion should be denied.

As detailed below, each of Defendants' arguments lack merit. First, the FAC does not violate Rule 8. While the FAC contains an above-average number of factual allegations, the FAC is commensurate with the length and breadth of Defendants' misconduct. Despite their protests, Defendants display no difficulty in understanding the claims Plaintiffs have raised in the FAC. The

350-paragraph FAC describes years of unlawful and discriminatory behavior by Defendants in detail—as is required for Plaintiffs to state their claims against Defendants. The FAC bears no resemblance to the complaints examined in the cases Defendants provide as support for their Rule 8 motion.

Second, Defendants' reliance on the Court's decision in *AER Advisors* is misplaced and misunderstands Plaintiffs' claims. Plaintiffs are not suggesting that there is "an implicit good faith requirement in [the Bank Secrecy Act]." Instead, Plaintiffs point out what should be obvious: Defendants cannot hide behind BSA immunity to act in an unconstitutional and discriminatory manner toward Plaintiffs and those like them. As detailed below, this case is different from *AER Advisors* precisely because Plaintiffs allege unlawful lending and loan servicing practices — practices which did not come to light until 2023 when Plaintiffs learned about Defendants malicious (even if immunized) SAR filings. The gravamen of Plaintiffs' complaint is that Defendants acted in an unconstitutionally discriminatory manner in a whole series of activities, including certain ones that may be immunized. Defendants' focus on *AER Advisors* and the question of SAR immunity ignores the constitutional carnage Defendants' other activities caused.

Among other allegations, Plaintiffs' claims are premised on the Bank's falsifying transaction records to mischaracterize them, reporting of the alleged suspicious conduct to other banks and financial institutions, and on Defendants' failure to file SAR reports against white, "VIP" bank customers engaged in similar or more questionable transactions. Plaintiffs' allegations assert that the Bank formulated a discriminatory policy and practices regarding which clients it would claim were engaged in suspicious activity and which clients it would protect from such claims. No immunity applies for these activities even though Defendants' SARs reporting activity has supplied some of the context.

Third, Defendants have established no basis for dismissing Plaintiffs' unjust enrichment, tortious interference, and G.L. c. 93A claims. Defendants' argument attacking these claims are premised principally on disputing the truth (rather than the sufficiency) of Plaintiffs' allegations. Defendants' disagreement with Plaintiffs' factual allegations is irrelevant on a motion to dismiss. Defendants' other arguments about these causes of action amount to an argument of "claim preclusion." This is an affirmative defense on which Defendants bear the burden of proof. Defendants cannot satisfy that burden on a motion to dismiss.

Finally, Defendants argue that certain of Plaintiffs' claims are barred by statutes of limitation. Although Plaintiffs' complaint details a course of conduct that began many years ago, essential details of Defendants' conduct that is at the heart of Plaintiffs' claims was not disclosed to nor known by Plaintiffs until recently and within the statutes of limitations applicable to each of Plaintiffs' claims. Defendants point to allegations that certain Plaintiffs made in a state Superior Court case as evidence that Plaintiffs' claims accrued and that the statues of limitations have run. The claims asserted in the Superior Court case, however, are not the same claims asserted here. The gravamen of the Superior Court action was breach of contract and business torts arising out of Defendants' failure to honor the terms of a loan agreement. Plaintiffs knew enough about those claims at the time to plead them in the Superior Court case. The focus of the claims here is different, the essential facts were hidden, and Plaintiffs pleaded these claims in a timely manner once sufficient details emerged to notify Plaintiffs that they had been harmed in the ways claimed here.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The facts are laid out in the FAC. In short, Defendants engaged in a prolonged series of unlawful acts designed to deprive Plaintiffs of their constitutional rights, the result of which was to damage the reputation, financial standing and legal status of Plaintiffs.

Plaintiffs filed their original complaint on April 10, 2024. After the filing of the original complaint, Plaintiffs' counsel met and conferred with opposing counsel in good faith to hear their concerns. Plaintiffs — again in good faith — agreed to address some of those concerns through an amendment. Plaintiffs filed their FAC on October 25, 2024. The FAC shaved dozens of paragraphs of factual allegations, removed nine causes of action, and effectively dismissed two defendants (without prejudice) by removing them from the FAC.

### III.    LEGAL STANDARD

Where, as here, defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "take all factual allegations as true and [ ] draw all reasonable inferences in favor of the plaintiff." *Rodriguez–Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 96 (1st Cir. 2007). The court must "neither weigh[ ] the evidence nor rule[ ] on the merits because the issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." *Day v. Fallon Cmty. Health Plan, Inc.*, 917 F.Supp. 72, 75 (D.Mass.1996). A motion to dismiss should be denied if a plaintiff has shown "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Rule 8 of the Federal Rules of Civil Procedure is designed to "give a defendant fair notice of the claim and its basis as well as to provide an opportunity for a cogent answer and defense." Dismissal for noncompliance with Rule 8 is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *Sayied v. White*, 89 Fed.Appx. 284 (1st Cir. 2004).

### IV.    ARGUMENT

#### a.  <u>The FAC Does Not Violate Rule 8</u>

Defendants argue that the FAC violates Rule 8 because it contains more than 300 paragraphs and 800 pages of exhibits. Defendants support this argument by citing to *Belanger v.*

*BNY Mellon Asset Mgmt., LLC*, 307 F.R.D. 55 (D. Mass. 2015). The complaint in *Belanger* bears no resemblance to the FAC. In *Belanger*, the plaintiff filed a 462-*page* complaint with 2,767 numbered paragraphs and 393 exhibits. *See Belanger*, 307 F.R.D. at 56. The *Belanger* complaint named forty defendants, ranging from individual attorneys to the Commonwealth of Massachusetts. *See id.*

By contrast, the FAC — while lengthy — tells a clear and cogent story of Defendants' years-long and coordinated campaign of discrimination and other unlawful practices against Plaintiffs. Each paragraph of the FAC contains a simple, concise, and direct allegation that Defendants should have little trouble admitting or denying. Most of Plaintiffs' numbered paragraphs are limited to one or two plain sentences. There is thus nothing "rambling" or "incoherent" about Plaintiffs' factual allegations. As to the legal claims, the FAC lays out just five related causes of action against Defendants. The FAC defines which plaintiffs are bringing each cause of action and which defendant or defendants are the subject of each cause of action. [See FAC at 62-67.] This is not the type of complaint that warrants dismissal for noncompliance with Rule 8.

While the causes of action do incorporate preceding factual allegations, this is because each cause of action is based on the same pattern of conduct. Still, Defendants argue that it is "not possible for Defendants to possibly determine which of the 300 plus paragraphs of allegations apply to each Count asserted against them." [Def. Brief at 5.] But even if Defendants required additional clarity on Plaintiffs' allegations or causes of action, the proper recourse would be a motion for a more definite statement under Rule 12(e), not the drastic remedy of dismissal.

Defendants have had no trouble understanding the allegations or causes of action lodged against them. Plaintiffs have not disguised their causes of action. There is nothing unintelligible about the FAC. Defendants' motion to dismiss on Rule 8 grounds should thus be denied.

**b. Plaintiffs' Constitutional Claims Do Not Rely Solely on Defendants' SAR Disclosure**

Defendants next argue that Plaintiffs' claims must be dismissed under Rule 12(b)(6) because "Plaintiffs cannot use reporting Lowell Five made under the Bank Secrecy Act to support any of their claims." [Def. Brief at 7.] Defendants rely on the immunity provided by 31 U.S.C. Section 5318(g)(3)(A). Under this liability shield, a financial institution that makes a voluntary disclosure of any possible violation of law or regulation to a government agency cannot be liable "for such disclosure . . .." Defendants — ignoring dozens of allegations about their discriminatory and unlawful behavior—argue that "Counts I and II must be dismissed because there are no facts to support them outside of Lowell Five's protected activity in reporting suspicious activity." [Def. Brief at 7.] Defendants' argument should be rejected.

Defendants are incorrect that Counts I and II are premised solely on the filing of the SAR. The FAC identifies numerous markers of Defendants' discriminatory behavior and intent. Among other allegations Plaintiffs have alleged:

- the Bank's lending, loan servicing practices, record-keeping and investigatory conduct that breached the Bank's contracts with Plaintiffs and interfered with their rights were motivated by discriminatory animus [FAC ¶¶88-112; 180-90; 271-308];

- the Bank altered and falsified at least 17 banking transactions to contradict the explicit instructions given and to mischaracterize them as potential violations of law [FAC ¶¶ 17-36, 113-18, 121-37; 150-52; 154-62];

- the Bank provided a false narrative to the FBI of Beej Das's banking activity and coached its employees to provide interview testimony consistent with the false narrative [FAC ¶¶ 138-48];

- the Bank conducted no investigation or to file SAR reports concerning more concerning banking practices by its white, VIP client Lori Trahan [FAC ¶¶ 170-76];

- the Bank leaked information concerning the FBI's investigation of Das to damage and destabilize the Plaintiffs [FAC ¶¶ 178-79];

- the Bank doctored documents and falsified evidence before the Superior Court [FAC ¶¶ 214-42];

- the Bank violated the Bankruptcy Court's automatic stay and failed to disclose insurance proceeds in its Bankruptcy Court filings [FAC ¶¶249-67]; and

- the Bank used the leverage of investigations into Beej Das' campaign finance issues pretextually and to damage the Plaintiffs, deprive them of their contractual and constitutional rights, foreclose on the hotel, extract financial concessions and ultimately financially ruin Plaintiffs [FAC ¶¶ 191-213].

Defendants' filing of SARs regarding certain campaign account activities and transactions conducted at Lowell Five is important to Plaintiffs' case because disclosure of those filings, the activities preceding them, and the details of the Bank's conduct in the FBI investigation led to Plaintiffs' discovery of key facts that finally put the scale of the Bank's actions into context. That activity is, however, but one category of many facts that Plaintiffs have alleged in support of their claims.

Defendants understandably raise the broad immunity afforded to financial institutions under the BSA, hoping to immunize all their underlying behavior. But the BSA's broad safe harbor does not extend that far. It does not insulate the Bank from the rest of the discriminatory conduct it engaged in that injured and damaged the Plaintiffs.

In fact, the BSA immunity does not even insulate the Bank from all its SAR related behavior. Immunity does not apply to the Bank's failure to submit SARs regarding the Bank's white, VIP customers at all. *See, e.g., Sonders v. PNC Bank, N.A.*, 2001 WL 1231812 (E.D. Pa. 2001) (rejecting argument that 31 U.S.C.A. § 5318(g)(3) protects a bank for not reporting suspicious transactions); *In re I.G. Services, LTD.*, 2004 WL 5866104 (Bankr. W.D. Tex. 2004)

(immunity under 31 U.S.C.A. § 5318(g)(3)(A) does not apply if a financial institution does not file a suspicious-activity report); *Tiede v. CorTrust Bank, N.A.*, 2008 SD 31, 748 N.W.2d 748, 27 I.E.R. Cas. (BNA) 1371 (S.D. 2008) (BSA safe harbor does not provide immunity for a financial institution that orders a bank officer not to make disclosures required by the Bank Secrecy Act); *In Grad v. Associated Bank, N.A.*, 2011 WL 2184335 (Wis. Ct. App. 2011) (no immunity for financial institutions for their failure to make required reports or keep required records). To the extent the Bank formulated or developed a discriminatory policy on the keeping of records or the bank customers against which it would not file SAR reports, that conduct (among the other discriminatory conduct alleged) is sufficient to support Plaintiffs' claims. Plaintiffs have alleged that Defendants routinely fail to file SAR reports on privileged clients. [FAC ¶¶ 189-190]. The Bank Secrecy Act and its immunity simply cannot provide Defendants with immunity from ECOA, state and federal banking regulations, or other civil rights violations based on their conduct.

### c.  Defendants Have Established No Basis for Dismissing Plaintiffs' Unjust Enrichment, Tortious Interference, and 93A Claims

Defendants' argument attacking Plaintiffs' unjust enrichment, interference with contract and G.L. c. 93A claims are premised principally on disputing Plaintiffs' allegations, which is not the stuff of motions to dismiss, and obliquely asserting claim preclusion, which does not apply here. On page 8 of their Memorandum, Defendants assail Plaintiffs' unjust enrichment and tortious interference claims as failing to state claims under Fed. R. Civ. P. 12(b)(6) but make no argument or reference to any portion of the FAC to limn what element of these claims Plaintiffs failed to adequately plead. Defendants appear simply to dispute Plaintiffs' claims in total.

Defendants' argument then pivots to describing what Defendants claim the Middlesex Superior Court ruled in its summary judgment order concerning unjust enrichment and tortious interference claims brought by the plaintiffs in that case. Although Defendants do not appear to

assert it as such, this argument is one of claim preclusion, which is an affirmative defense on which Defendants bear the burden of proof. *See In re Sonus Networks, Inc, S'holder Derivative Litig.*, 499 F.3d 47, 56 (1st Cir. 2007); *McSorley v. Town of Hancock*, 11 Mass. App. Ct. 563, 417 N.E.2d 982 (1981). Plaintiffs dispute whether advancing a motion to dismiss based on an affirmative defense is procedurally appropriate. Even if that issue were to be resolved in favor of permitting Defendants to advance such an argument, Defendants have not even attempted to establish the elements and thus have not provided the Court any basis to bar Plaintiffs' claims on claim preclusion grounds.

"Claim preclusion is strong medicine and should not casually be dispensed." *Alston v. Town of Brookline*, 997 F.3d 23, 36 (1st Cir. 2021). The Court applies Massachusetts law to determine the preclusive effect of the state-court judgment. *See Torromeo v. Town of Fremont*, 438 F.3d 113, 115-16 (1st Cir. 2006). In Massachusetts, "[c]laim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action." *Kobrin v. Bd. of Regist. in Med.*, 444 Mass. 837, 843 (2005), *quoting, O'Neill v. City Manager of Cambridge*, 428 Mass. 257, 700 N.E.2d 530, 532(1998)). The invocation of claim preclusion requires three elements: "(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." *Kobrin v. Bd. of Registration in Med.*, 444 Mass. 837, 843, 832 N.E.2d 628, 634 (2005), *quoting, DaLuz v. Department of Correction*, 434 Mass. 40, 45 (2001), *quoting Franklin v. North Weymouth Coop. Bank*, 283 Mass. 275, 280 (1933).

Defendants' claim preclusion argument fails on perhaps the most basic of the three elements — *i.e.*, a prior final judgment on the merits. There is not a final judgment in the Massachusetts Superior Court action on which Defendants can rely for their argument. The

Superior Court has entered a summary judgment order but has not entered a final judgment. Indeed, the Court has sought additional information from all parties. As a result, claim preclusion simply does not apply and cannot provide a basis for dismissal of Plaintiffs' claims.[1]

Even if there were a final judgment in the Superior Court, Defendants have still failed to establish their affirmative defense. Claim preclusion applies only to claims based "entirely on events preceding the state-court judgment [that] could have been adjudicated in state court and are therefore barred." *See id.; see also Heacock v. Heacock*, 402 Mass. 21, 520 N.E.2d 151, 153 (1988). For claim preclusion to attach as to mixed claims, the defendants must establish that the prior judgment is one on the merits, that the parties to the prior and present suits are the same or in privity, and that the causes of action stated in the prior and present suits are the same. *See Kobrin*, 444 Mass. at 843.

Plaintiffs' unjust enrichment and tortious interference claims are not subject to preclusion because there is not an identity of parties. *Alston*, 997 F.3d at 37-39, *citing, Goldstein v. Galvin*, 719 F.3d 16, 23 (1st Cir. 2013). The plaintiff parties in the Superior Court case include Mitra Das, Mukti Das, Abhijit Das and Boston East Tyngsborough Holdings, LLC. The parties here include Troca Holdings LLC, Mukti Das and Mitra Das. Thus, although Mukti and Mitra Das are parties in both cases, Troca Holdings LLC is not a party to the Superior Court case. Importantly, Troca Holdings LLC is an insured entity on the Zurich American insurance policies that are at the center of Plaintiffs' unjust enrichment and tortious interference claims. The instant action also pleads claims against two new defendants, David Wallace and John Pratt, Jr. individually, in addition to

---

[1]    Even if the Superior Court does enter a final judgment dismissing the plaintiff's unjust enrichment and tortious interference claims in that case, Plaintiffs may pursue appeal. While an appeal itself would not render the Superior Court judgment not final for purposes of claim preclusion as to the contours of those claims, if the appeal results in the judgment being vacated, the collateral estoppel consequences, if any, would be eliminated. *See* 41A Mass. Prac., Appellate Procedure § 73:18 (4th ed.)

The Lowell Five Cent Savings Bank. Accordingly, even as to the defendants in the Superior Court case and this action there is no identity of parties, a necessary condition for claim preclusion to apply.

Finally, claim preclusion also does not apply because the allegations raised here detail distinct claims from those that were alleged in the Superior Court. Plaintiffs' claims in the FAC are premised on separate, subsequent conduct that arose after the Superior Court complaint was filed and plausibly gives rise to claims for relief. Under Massachusetts law, "[a] claim is the same for [claim preclusion] purposes if it is derived from the same transaction or series of connected transactions." *Saint Louis v. Baystate Med. Ctr., Inc*., 30 Mass. App. Ct. 393, 568 (1991). "What factual grouping constitutes a 'transaction' ... [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether treating them as a unit conforms to the parties' expectations or business understanding or usage." *Salvati v. Fireman's Fund Ins. Co*., 368 F. Supp. 3d 85, 91 (D. Mass. 2019), *quoting*, Restatement (Second) of Judgments § 24; *see In re Iannochino*, 242 F.3d 36, 46 (1st Cir. 2001).

"Claim preclusion bars separate suits on the same wrong but not for two or more distinct wrongs, even if those distinct wrongs are similar in nature." *Airframe Systems, Inc. v. Raytheon* Co., 520 F.Supp.2d 258 (D. Mass. 2007), *citing, Rohauer v. Killiam Shows, Inc*., 379 F. Supp. 723, 736 (S.D.N.Y.1974); *Lawlor v. National Screen Serv. Corp*., 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955)), *rev'd on other grounds* 551 F.2d 484 (1st Cir.1977); *and Charter Commc'n Entm't I, DST v. Burdulis*, 460 F.3d 168, 180 n. 12 (1st Cir.2006). "Claims arising subsequent to a prior action ... are not barred by res judicata regardless of whether they are premised on facts representing a continuance of the same 'course of conduct.'" *Wittkowski v. Norcliff*, Civil Action

No. 14-11107-NMG, 2016 WL 11734219, *8 (D. Mass. Aug. 25, 2016)(not reported), *quoting,*

*Darney v. Dragon Prod. Co., LLC*, 592 F. Supp. 2d 180, 184 (D. Me. 2009) (citations omitted);

*see also Cordell v. Howard*, 879 F. Supp. 2d 145, 153 (D. Mass. 2012) (reasoning claims alleging

specific conduct against defendants was sufficiently distinct to present a separate claim), *citing,*

*Gonzalez-Pina v. Rodriguez*, 407 F.3d 425, 430 (1st Cir. 2005)) ("subsequent conduct, even if it

is of the same nature as the conduct complained of in a prior lawsuit, may give rise to an entirely

separate cause of action."). "Likewise, a special incident different from what already occurred in

the past in the prior action may serve to differentiate the two causes of action such that claim

preclusion does not apply." *Cordell*, 879 F. Supp. 2d at 153 (internal quotation marks and citations

omitted); *see also Shelby v. Factory Five Racing*, *Inc.*, 684 F.Supp.2d 205, 212–13 (D.Mass.2010)

(even where nature of conduct is the same in both actions, claim preclusion does not apply when

"subsequent conduct was broader and more far-reaching than the conduct which led to the original

complaint." (quotations and citation omitted)).

    These principles apply here and confirm that Plaintiffs' claims in this Court are distinct

from the claims raised in the Superior Court. The unjust enrichment claim alleged in the Superior

Court action was based on the bank's accepting payments from the borrowers without providing

the financing agreed to in the loan agreements and extracting personal guarantees from Mukti and

Mitra Das under false pretenses where no such requirements existed under the original loan

financing. Plaintiffs have not and do not make those same claims here. Plaintiffs' unjust

enrichment claim stems from Defendants having solicited and been paid an insurance settlement

from Plaintiffs' insurer relating to storm damage to the hotel that Defendants never disclosed to

any party – including the United States Bankruptcy Court, which had jurisdiction over the matter

for some period of time - nor crediting the settlement to Plaintiffs' debt. Plaintiffs have also alleged

that the Defendants' backroom deals with Zurich (a) significantly reduced the settlement amount because Defendants lacked understanding of the nature of the damage, its impact on the asset, and the feasibility of repairs possible on the amount agreed between Defendants and Zurich and (b) caused Zurich to close the claim entirely without any notice to Plaintiffs, the holders of the insurance policies in question. Plaintiffs only learned of the payment Zurich made and that its insurance claim file had been deemed closed on or about March 12, 2024, when an attorney representing Zurich disclosed such information to Plaintiffs.

Similarly, Plaintiffs' tortious interference claim is distinct, more specific and arises from the same subsequent conduct.  The claim made in the Superior Court case was that the Bank interfered with Plaintiffs contract with Zurich by contacting Zurich and threatening claims unless payments were made to the Bank as loss-payee and then leveraging that pressure to extract concessions from Plaintiffs. In this case, Plaintiffs allegations assert that the Bank—at a much later time—secretly negotiated with Zurich to be paid more than $250,000 on Plaintiffs' insurance claim, caused Zurich to fail to disclose to Plaintiffs that payment had been made, and also caused Zurich to close Plaintiffs' claims file entirely and after making an inadequate settlement payment without any notice to Plaintiffs.

Finally, "the doctrine of claim preclusion sieves claims, not facts." *Alston*, 997 F.3d at 40, *citing Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 136 S. Ct. 2292, 2305, 195 L.Ed.2d 665 (2016). Thus, simply because the claims asserted here and those asserted in the Superior Court allege overlapping facts does not bar consideration of those facts here. *Id*. Nothing precludes Plaintiffs "from bringing the present claims or from supporting those claims with facts that pre-date the state court judgment." *Id*. To the extent that the district court's rulings contravened these principles, those rulings were incorrect.

13

Defendants have not asserted any grounds for dismissal of Plaintiffs' Chapter 93A claim other than to state it derives from Plaintiffs' other claims that Defendants assert should be dismissed. For the same reasons that Defendants' arguments on those other claims fail, their argument for dismissal of the Chapter 93A claim also fails. Accordingly, Defendants' motion should similarly be denied on this count of Plaintiffs' First Amended Complaint.

### d.  **Plaintiffs' Claims Are Not Barred by Statutes of Limitation**

Plaintiffs' claims are not barred by statutes of limitation. As is alleged in the FAC, certain of the critical facts necessary for Plaintiffs' awareness of their claims was unknown and not discoverable by Plaintiffs until very recently. In fact, many of the most salient facts outlined in Plaintiffs' claims only surfaced during the Government's trial against Beej Das in 2023 and when Zurich's lawyer disclosed that a settlement payment had been made to the Bank that had not been disclosed to Plaintiffs previously.

"If a plaintiff becomes aware that they have been wronged, they should promptly bring suit." _McIntyre v. United States_, 367 F.3d 38, 55 (1st Cir. 2004) (citation omitted). "A cause of action [, however,] does not accrue when a person has "a mere hunch, hint, suspicion, or rumor of a claim, . . ." _Id_. at 52. At most suspicions "give rise to a _duty to inquire_ into the possible existence of a claim in the exercise of due diligence." _Id_. "The degree of knowledge of injury and its cause sufficient to 'prompt a reasonable person' to seek advice (on whether to bring a claim for example) will vary with the circumstances, but 'conclusive knowledge is not necessary.'" _Krick v. Raytheon Co._, 695 F. Supp. 3d 202, 213 (D. Mass. 2023), _quoting, Skwira v. United States_, 344 F.3d 64, 74 (1st Cir. 2003). Here, Plaintiffs could not have known of certain salient facts undergirding their claims until they were revealed in 2023. Indeed, Plaintiffs have dutifully attempted to uncover facts regarding Defendants' activities and conduct for years but have been met with steady

obfuscation, a lack of transparency, and even falsified documentation—all from a Massachusetts chartered bank and its leadership. These are extraordinary circumstances and mitigate against any statute of limitation bar.

Moreover, a question of whether Plaintiffs knew or should have known of these claims is a question of fact and not appropriate for a motion to dismiss. *See Lawson v. Affirmative Equities Co., L.P.*, 341 F. Supp. 2d 51, 68 (D. Mass. 2004) ("[w]hether a plaintiff knew or should have known of an injury so as to trigger the running of a statute of limitations is, with rare exception, a jury issue"); *see also Santiago Hodge v. Parke Davis & Co.*, 909 F.2d 628, 633 (1st Cir. 1990) ("[t]he determination of when appellees had knowledge of 'both the injury and its connection with the act of defendant,' ... is a question of fact."), *quoting, Lavellee v. Listi*, 611 F.2d 1129, 1131-32 (5th Cir. 1980); *cf. Young v. Lepone*, 305 F.3d 1, 8–9 (1st Cir. 2002) (deciding whether "storm warnings" were sufficient to place plaintiff on inquiry notice should be determined as a matter of law only when the facts are either admitted or undisputed).

## V.    CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss in its entirety.

Respectfully submitted,

/s/Michael J. Duffy
Michael J. Duffy (BBO# 652621)
mduffy@tddlegal.com
Tymann, Davis & Duffy, LLP,
45 Bromfield Street, 6th Floor
Boston, Massachusetts 02108
Telephone: (617) 933-9490

Michael L. Simes
Simes Law P.C.
405 Lexington Avenue, 26th Floor
New York, NY 10074
646-499-0676
Email: mike@simespc.com
(Admitted pro hac vice)

*Counsel for Plaintiffs*

Dated: January 13, 2025

**CERTIFICATE OF SERVICE**

I certify that, on January 13, 2025, this document (filed through the ECF system) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and electronic copies will be sent to those indicated as non-registered participants.

/s/ Michael J. Duffy
Michael J. Duffy